Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CORPORACIÓN PARA LA DEFENSA DEL POSEEDOR DE LICENCIA DE ARMAS DE PUERTO RICO, INC. (CODEPOLA) Y OTROS<br>Demandantes<br>**Parte Peticionaria**<br><br>v.<br><br>ACCIÓN SOCIAL Y PROTECCIÓN AMBIENTAL INC. (ASPA) Y OTROS<br>Demandados<br>**Parte Recurrida** | TA2025CE00245 CONSOLIDADO CON TA2025CE00259 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: SA2022CV00024 CONSOLIDADO CON SA2022CV00025<br><br>Sobre: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) |

Panel integrado por su presidente, la Jueza Grana Martínez, Juez Rodríguez Flores y Jueza Álvarez Esnard[1]

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2025.

Mediante el recurso de *certiorari* TA2025CE000245, comparece la parte demandante, Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc. (CODEPOLA), el Sr. Ariel Torres Meléndez, la Sra. Ixia Lee Castro Santana y la comunidad de bienes compuesta entre ellos; el Sr. Roberto Ramos Colón y la Sociedad Legal de Gananciales compuesta con su esposa Fulana de Tal, y solicitan que revoquemos la *Resolución* emitida el 5 de junio de 2025, y notificada el 9 de junio de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Guayama. Mediante el referido dictamen, el TPI denegó la *Moción Solicitando Desestimación de Reconvención* presentada por estos comparecientes.

---

[1] Debido a que Hon. Félix R. Figueroa Cabán desde el 6 de mayo de 2025 dejó de ejercer funciones como Juez del Tribunal de Apelaciones, mediante la Orden Administrativa OATA-2025-156 de 19 de agosto de 2025, se designa en sustitución a la Hon. Alicia Álvarez Esnard.

A su vez, en un segundo recurso de *certiorari,* TA2025CE000259, comparece la parte demandada, Acción Social y Protección Ambiental, Inc., su presidente José. Juan Cora, el Sr. Rafael Díaz Casiano y la Sra. María Meléndez Delannoy cuestionando el mismo dictamen judicial.

Dado que los recursos plantean errores en la misma resolución, ordenamos su consolidación conforme a la Regla 80.1 del Reglamento de este Tribunal de Apelaciones[2], y disponemos.

**I.**

El 30 de enero de 2022, CODEPOLA presentó una demanda de *injunction* preliminar y permanente al amparo de la Regla 57.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1, en el caso SA2022CV00024, y una demanda por libelo y difamación en el caso SA2022CV00025[3], contra la Corporación Acción Social y Protección Ambiental, Inc. (ASPA), su presidente, José Juan Cora Collazo (Sr. Cora Collazo), el Sr. Rafael Díaz Casiano (Sr. Díaz Casiano), sus respectivas esposas y la Sociedad Legal de Gananciales, y otros codemandados de nombre desconocido. CODEPOLA expuso que ASPA y sus miembros habían hecho manifestaciones difamatorias en varios medios de comunicación, redes sociales y lugares públicos en contra del proyecto de polígono de tiro que la parte demandante se propone construir en el municipio de Salinas, Puerto Rico. CODEPOLA alegó que estas manifestaciones públicas le han causado daños a su reputación, además de interrumpir la construcción del polígono de tiro. Ante ello, solicitó al TPI que celebrara una vista, le concediera el interdicto preliminar o permanente solicitado y emitiera una orden para que ASPA y demás

---

[2] Regla 80.1 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, a las págs. 106-107, 215 DPR __ (2025).

[3] El 22 de abril de 2022, el TPI dictó orden de consolidación de los casos. Véase, expediente electrónico del caso SA2022CV00024 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada núm. 30.

codemandados cesen y desistan de publicar información falsa y difamatoria en contra del polígono de tiro propuesto y de invadir los terrenos privados donde se propone la construcción del proyecto.[4]

El 21 de abril de 2022, ASPA, el Sr. Cora Collazo y el Sr. Díaz Casiano radicaron de manera conjunta su contestación a la solicitud de *injunction* preliminar y permanente, junto con una **reconvención**.[5] En su contestación, negaron las alegaciones de la demanda y, como defensas afirmativas, alegaron que los demandantes no son los titulares de la finca en la que se pretende construir el polígono, que el remedio de *injuction* solicitado realmente constituye una censura previa a sus expresiones como opositores al proyecto; que los demandantes son figuras públicas, que las expresiones no se hicieron con malicia real y que éstas se encuentran protegidas por la doctrina de hipérbole retórica. Arguyeron, además, que el mecanismo de *injuction* preliminar o permanente no podía utilizarse para privar a un ciudadano de ejercer su derecho a comparecer ante las agencias del Estado a presentar su oposición a proyectos de construcción sin permiso y en violación a normas ambientales, como tampoco se puede utilizar para suspender un procedimiento judicial.

En la **reconvención**, ASPA, el Sr. Cora Collazo y el Sr. Díaz Casiano (en conjunto, ASPA) adujeron que la finca donde se desarrolla el polígono de tiro está sujeta a ciertas condiciones restrictivas o servidumbres en equidad incompatibles con el proyecto. También alegaron que procedía la paralización del proyecto a tenor con el Artículo 14.1 de la Ley Núm. 161-2009, *Ley para la Reforma de Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9024 (Ley Núm. 161-2009), por haberse este iniciado sin contar con los correspondientes permisos. Por ello, solicitaron al tribunal que

---

[4] *Íd.,* Entrada núm.1.
[5] *Íd.,* Entrada núm. 25.

desestimara la petición de *injunction* preliminar y permanente de CODEPOLA y, en su lugar, emitiera el *injunction* estatuario dispuesto en el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* y ordenara la paralización de las obras en la finca y también prohibiera cualquier solicitud de reclasificación y recalificación de la zona. Además, pidieron la concesión de daños y gastos del litigio.

El 13 de abril de 2023, ASPA enmendó sus alegaciones mediante una *Reconvención para incluir partes indispensables.*[6] Así, incluyó como reconvenidos a los titulares registrales de la finca donde se propone la construcción del polígono de tiro, Sr. Roberto Ramos Colón (Sr. Ramos Colón), su esposa Rosa Eneida León Diaz (Sra. León Díaz) y la Sociedad Legal de Gananciales por ellos compuesta; así como al presidente de CODEPOLA, Sr. Ariel Torres Meléndez (Sr. Torres Meléndez), su esposa Ixia Lee Castro Santana (Sra. Castro Santana) y a la Comunidad de Bienes compuesta entre ellos. Éstos fueron debidamente emplazados.[7]

Posteriormente, el 14 de julio de 2023, CODEPOLA presentó *Demanda Enmendada*, a los fines de incluir como codemandantes al Sr. Torres Meléndez, la Sra. Castro Santana y a la comunidad de bienes compuesta entre ellos.[8]

Así las cosas, y luego de varios incidentes procesales que son innecesarios pormenorizar, el 7 de mayo de 2024, CODEPOLA, el Sr. Torres Meléndez y la Sra. Castro Santana, presentaron una *Moción Solicitando Desestimación de Reconvención.* En el escrito, esbozaron una relación de hechos incontrovertidos que, a juicio de los promoventes, justificaban la desestimación de la reconvención al amparo de las Reglas 10.2 y 36 de Procedimiento Civil, 32 LPRA Ap.

---

[6] *Íd.,* Entrada núm. 110.
[7] *Íd.,* Entradas núms.113-118.
[8] *Íd.,* Entrada núm. 159.

V, R. 10.2 y 36, con alusión a la prueba documental que sustentaba sus alegaciones.[9]

Los promoventes de la solicitud de desestimación señalaron que la reconvención planteaba dos alternativas por las cuales se alegaba que se podía paralizar el proyecto de polígono de tiro, a decir; (1) la existencia de servidumbres en equidad que impedían el establecimiento del comercio y (2) el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, para que no se perjudicara el interés propietario de los opositores al proyecto y se mantuviera la clasificación y calificación existente en el terreno. Partiendo de estos supuestos, los promoventes de la solicitud de desestimación de reconvención arguyeron que ninguna de esas opciones era viable debido a que lo que se realizó en el terreno donde se propone el proyecto fueron trabajos autorizados por un permiso simple de movimiento de corteza terrestre. Según explicaron, el Departamento de Recursos Naturales (DRNa) emitió una orden de paralización de la construcción del proyecto cuando ya se habían culminado los trabajos de movimiento de corteza terrestre y donde aún no se había iniciado obra de construcción alguna. Apuntaron que, al no haber ningún tipo de construcción en el predio, tampoco había obra en progreso sujeta a paralización.

También, los promoventes de la solicitud de desestimación solicitaron que se desestimara la reconvención respecto a la entidad CODEPOLA ya que, a pesar de que fue la proponente del permiso de limpieza de terreno, no figura como titular de la finca ni es parte proponente del proyecto de polígono de tiro. Aclararon que los proponentes del polígono son el Sr. Ramos Colón (propietario de la finca), junto con el Sr. Torres Meléndez y la entidad PR Shooters, Inc. Mencionaron que ASPA había reconocido este hecho en una

---

[9] *Íd.,* Entrada núm. 235.

propia moción de desestimación registrada en la entrada núm. 234 en el caso SA2022CV00024 de SUMAC.

El 12 de junio de 2024, ASPA presentó su *Oposición a "Solicitud de Desestimación de Reconvención" de demandante entrada 235*.[10] En esencia, reiteró sus planteamientos referentes a las servidumbres en equidad y el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* para respaldar su reclamo en reconvención de paralizar el proyecto de polígono de tiro. También adujo que CODEPOLA, el Sr. Torres Meléndez y la Sra. Castro Santana hicieron una falsa representación en cuanto a que el proyecto ya se encontraba paralizado con el propósito de inducir al tribunal a denegar la solicitud de paralización contenida en la reconvención. Asimismo, ASPA argumentó que no procedía la desestimación de la reconvención en cuanto CODEPOLA porque ésta había sido identificada en todos los escritos como proponente del proyecto de polígono de tiro.

El 10 de diciembre de 2024, el TPI celebró la vista argumentativa con relación a la moción en solicitud de desestimación de la reconvención y su oposición. La vista continuó el 6 de marzo de 2025.[11]

El 2 de mayo de 2025, notificada el 5 de mayo de 2025, el TPI dictó *Sentencia Parcial* mediante la cual desestimó la reconvención en cuanto a CODEPOLA por ésta no ser la promovente del proyecto de construcción del polígono de tiro.[12]

Poco después, el 5 de junio de 2025, notificada el 9 de junio de 2025, el TPI dictó *Resolución*[13]*,* en la que consideró la moción de desestimación de reconvención como una solicitud de sentencia

---

[10] *Íd.,* Entrada núm. 247.
[11] *Íd.,* Entradas núm. 281 y 283.
[12] *Íd.,* Entrada núm. 284.
[13] *Íd.,* Entrada núm. 289.

sumaria, dado los documentos que se anejaron al escrito. Así pues, el TPI enumeró los siguientes hechos incontrovertidos:

1. El proyecto de construcción del polígono de tiro fue comenzado por CODEPOLA y el señor Ariel Torres Meléndez. Al momento en que los Demandados presentaron su Reconvención, CODEPOLA ya no era el promovente del proyecto de construcción.

2. El promovente del proyecto de construcción del polígono de tiro lo es el señor Ariel Torres Meléndez.

3. La finca donde se pretende construir el polígono de tiro es propiedad del señor Roberto Ramos Colón y su esposa la señora Rosa Eneida León Díaz.

4. El 19 de junio de 2021, el señor Ariel Ramos otorgó un Contrato [de] Alquiler con Opción de Compraventa, mediante el cual recibía del matrimonio Ramos-León, en alquiler con opción de compra, el predio de terreno donde pretendía construir el polígono de tiro.

5. Según surge del Contrato Alquiler con Opción de Compraventa, la propiedad del matrimonio Ramos-León se encuentra localizada en Vistas del Caribe, Carr. 706 Km. 2 Hm. 8, Barrio Aguirre, Salinas, Puerto Rico. La misma está inscrita en el folio 294, del tomo 228, finca número 9094, en el Registro de la Propiedad de Guayama, con número de catastro 418-000-004-31-00.

6. El señor Ariel Torres Meléndez comenzó un proceso de limpieza de corteza y movimiento de terreno en el predio donde se pretendía construir el polígono de tiro sin tener los permisos correspondientes.

7. El 17 de junio de 2021, la parte Demandante solicitó y consiguió que el OGPE les concediera un Permiso Simple para la Limpieza de Corteza, con el número PCT-006719.

8. El 24 de agosto de 2021, el Sargento Carlos Claudio Sánchez del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, llevó a cabo una inspección de los trabajos que se estaban realizando para la construcción del polígono de tiro.

9. El 24 de agosto de 2021, el Sargento Carlos Claudio Sánchez, encontró que el permiso, el cual estaba a nombre del señor Roberto Ramos Colón, era para la limpieza de capa vegetal y no para construcción. Además, encontró que el permiso de limpieza ya estaba vencido.

10. El 24 de agosto de 2021, el Sargento Carlos Claudio Sánchez, encontró que durante los trabajos de limpieza también se había llevado a cabo la construcción de terrazas.

11. El 24 de agosto de 2021, el Sargento Carlos Claudio Sánchez, le informó al señor Ariel Torrez Meléndez que

estaba violando las cláusulas del permiso de limpieza. Debido a que no tenía un permiso de construcción, les entregó una orden de cese y desista para paralizar los trabajos.

12. El 9 de septiembre de 2022, se presentó una Querella ante el Departamento de Recursos Naturales y Ambientales, en contra de los señores Ariel Torres Meléndez y Roberto Ramos Colón, por las supuestas violaciones encontradas el día 24 de agosto. En ésta se les citó a los querellados a una Vista Administrativa a celebrarse el 21 de octubre del 2022.

13. Para la fecha en que se presentó la enmienda a la Reconvención, ya los trabajos de construcción se encontraban paralizados.

14. La finca donde se pretende llevar a cabo la construcción del polígono de tiro es de (sic) propiedad del señor Roberto Ramos Colón, quien la adquirió mediante Escritura Pública Número 18 de Compraventa, otorgada el 13 de marzo de 2001, ante el abogado y notario, el licenciado Julio Martínez Ortiz.

15. La Escritura Pública Número 18, establece que la finca objeto de la compraventa está gravada por ciertas servidumbres de pozo y peatonal y vehicular. Además, establece que la finca se encuentra gravada por una "servidumbre de equidad para evitar que esta finca se utili[ce] para otros fines que no sean residenciales, consistente en que...":

> "... no se establecerá ninguna clase de colmados, supermercados, templos y salones de reuniones religiosas; almacenes, negocios donde se vendan bebidas alcohólicas; talleres de mecánica u hojalatería y pintura; almacenes para vender piezas de automóviles nuevas o usadas ("junker"), o de cualquier otra índole; los recipientes para recoger basura se mantendrán dentro de los límites de las fincas y no en las calles o aceras; no se mantendrán vehículos inservibles o pendientes de reparación en las calles, sino que deberán estar dentro de la propiedad de sus dueños; no podrán fijarse anuncios comerciales ("billboards") en las fincas; no se permitirá el establecimiento de granjas de animales domésticos tales como aves, ovejas, ganado porcino o bovino con fines comerciales o industriales; las siembras comerciales e industriales de frutas serán permitidas."

16. Las servidumbres contenidas en la Escritura Número 18, fueron establecidas originalmente mediante la Escritura Número 152, de Servidumbre de Equidad otorgada el 19 de diciembre de 1992, por los otorgantes Andrés Guerra Mondragón y María González Rodríguez, ante el abogado y notario, licenciado José Bolívar Aponte Colón.

17. El señor José J. Cora de la parte Demandada, mediante deposición del 20 de noviembre de 2023, declaró que las condiciones restrictivas no hacían alusión específica que prohibiera la construcción de un polígono de tiro.

18. El señor Ángel Luis Cruz Colón y su esposa Viviana Martínez Feliciano, quienes son integrantes de ASPA, parte Demandada, son colindantes de la finca donde se pretende construir el polígono de tiro.

19. La finca propiedad del señor Ángel Luis Cruz Colón y su esposa Viviana Martínez Feliciano, está sujeta, por su origen, a las mismas condiciones restrictivas que gravan la finca donde se pretende construir el polígono de tiro.

20. En la finca, el matrimonio entre el señor Ángel Luis Cruz Colón y la señora Viviana Martínez Feliciano, arrendó parte de sus terrenos a una compañía que mantiene ahí una antena de telecomunicaciones celulares.

21. El señor Ángel Luis Cruz Colón, mediante deposición del 26 de enero de 2024, declaró que las condiciones restrictivas no hacían alusión específica que prohibiera la construcción de antenas de telecomunicaciones.

22. El señor Ángel Luis Cruz Colón, mediante deposición del 26 de enero de 2024, declaró que las condiciones restrictivas no hacían alusión específica que prohibiera la construcción de un polígono de tiro.

23. La señora Viviana Martínez Feliciano, mediante deposición del 26 de enero de 2024, declaró que las condiciones restrictivas no hacían alusión específica que prohibiera la construcción de un polígono de tiro.

24. En los terrenos gravados por las condiciones restrictivas o de equidad, se estableció una granja de crianza de conejos que ya no se encuentra en funciones.

25. En los terrenos gravados por las condiciones restrictivas o de equidad se estuvo estableciendo una finca de cannabis.[14]

Luego de esbozar la norma jurídica pertinente a las Reglas 10.2 y 36 de Procedimiento Civil, *supra*, el TPI, en primer lugar, transcribió y analizó a aplicabilidad del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, a los hechos del caso. A continuación, concluyó lo siguiente:

Al analizar el Artículo 14.1 y las instancias por las cuales se puede recurrir al tribunal, encontramos que

---

[14] *Íd.,* Entrada núm. 289, a las págs. 5-9.

los hechos del caso ante nuestra consideración no cumplen con los requisitos establecidos. El artículo citado está disponible para revocar una determinación final; paralizar una obra iniciada ya sea por falta de permiso o uso indebido del mismo o; la demolición de las obras construidas sin permiso. Tomando en cuenta que al presente no existe una determinación administrativa final que pueda ser revocada, no se cumple con el primer requisito.

En cuanto al resto de los requisitos, no podemos paralizar un proyecto para el cual no se le ha concedido un permiso, que al momento se encuentra paralizado y por el cual no existe construcción a demoler. Por consiguiente, no procede que se le conceda a los Demandados el remedio solicitado y declaremos con lugar la desestimación en cuanto a este planteamiento.[15]

Subsiguientemente, el TPI reseñó la doctrina referente a las servidumbres en equidad o condiciones restrictivas y los supuestos en que éstas pueden modificarse o extinguirse, específicamente aquel vinculado con los cambios radicales en las condiciones del vecindario. A esos efectos, resaltó que ASPA planteaba la existencia de las condiciones restrictivas en la comunidad de manera acomodaticia, pues la servidumbre no impedía que en su finca ésta mantuviera una antena de telecomunicaciones, pero sí imposibilitaba la construcción del proyecto del polígono de tiro en el predio colindante. Ante ello, el TPI concluyó que:

… debemos pasar juicio sobre los cambios ocurridos en la comunidad, la extensión de los mismos y el efecto de éstos en la aplicabilidad de las servidumbres restrictivas. Los Demandados entienden que existen instancias por las cuales se deben poner en vigor las servidumbres restrictivas y otras por las cuales no es necesario.[16]

El TPI dedujo que la causa de acción sobre condiciones restrictivas abarca asuntos de credibilidad e involucra aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia, que ameritan ser dirimidos en juicio en su fondo.[17]

---

[15] *Íd.,* a la pág. 14.
[16] *Íd.,* a las págs. 21-22.
[17] *Íd.,* a la pág. 22.

En fin, a pesar de que en la parte dispositiva de la resolución el TPI resolvió declarar *no ha lugar* la *Moción Solicitando Desestimación de la Reconvención,* lo cierto es que dejó vigente la reclamación sobre condiciones restrictivas, pero desestimó la causa de acción de *injunction* estatutario amparada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.*

El 24 de junio de 2025, ambas partes litigantes presentaron sus respectivas solicitudes de reconsideración. Por un lado, CODEPOLA[18], el Sr. Torres Meléndez y la Sra. Castro Santana, solicitaron al TPI que reevaluara su negativa a desestimar la causa de acción sobre condiciones restrictivas.[19] Plantearon que la controversia respecto a la evaluación de las condiciones restrictivas advino académica tras desestimarse la causa de acción amparada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.* Ello, debido a que el TPI concluyó que no existe construcción o permiso relacionado que pueda transgredir las aludidas condiciones restrictivas. Agregaron que también las propias determinaciones de hecho de la *Resolución* números 17-25 demostraban la renuncia y abandono de las condiciones restrictivas del vecindario, y eran suficientes para desestimar la causa de acción relacionada con dichas restricciones.

De otra parte, ASPA solicitó al TPI que reconsiderara la desestimación de la causa de acción fundada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.*[20] Equiparó los hechos del presente caso con los de la opinión emitida por el Tribunal Supremo en *Díaz Vázquez et al. v. Colón Peña et al,* 214 DPR ___ (2024) , 2024 TSPR 113, y arguyó que, al igual que en la citada opinión, la reconvención

---

[18] A pesar de que, mediante la Sentencia Parcial de 2 de mayo de 2025, el TPI desestimó la reconvención en cuanto a CODEPOLA, ésta comparece como parte promovente de la solicitud de reconsideración de la resolución emitida el 5 de junio de 2025.

[19] Expediente electrónico del caso SA2022CV00024 en SUMAC, Entrada núm. 291.

[20] *Íd.,* Entrada núm. 292.

incoada en el presente caso presentaba alegaciones suficientes sobre la construcción del proyecto de polígono de tiro sin que existiera un permiso para ello, escenario que ameritaba restituir las alegaciones de la reconvención. En la alternativa, solicitó al tribunal la celebración de la vista dispuesta en el aludido Artículo 14.1 de la Ley Núm. 161-2009, *supra,* para tener la oportunidad de desfilar prueba para sostener su reclamo.

El TPI denegó ambas solicitudes de reconsideración mediante sendas resoluciones emitidas el 3 de julio de 2025. La concerniente a CODEPOLA se notificó ese mismo día, pero la de ASPA se notificó el 8 de julio de 2025.[21]

Inconforme con lo resuelto, el 4 de agosto de 2025, CODEPOLA, el Sr. Torres Meléndez y la Sra. Castro Santana incoaron el recurso de *certiorari* TA2025CE00245, en el que apuntaron los siguientes señalamientos de error:

**PRIMER ERROR:**
ERRÓ EL TPI AL NO DESESTIMAR LA CAUSA DE ACCIÓN SOBRE CONDICIONES RESTRICTIVAS POR NO SER UNA CONTROVERSIA JUSTICIABLE, SINO UNA CONSULTIVA LUEGO DE HABER DESESTIMADO LA CAUSA DE ACCIÓN BAJO EL ART. 14.1 DE LA LEY DE PERMISOS.

**SEGUNDO ERROR:**
ERRÓ EL TPI AL NO DESESTIMAR LA CAUSA DE ACCIÓN RESPECTO A LAS CONDICIONES RESTRICTIVAS PUES LA PARTE DEMANDADA-RECURRIDA ESTÁ IMPEDIDA DE REMEDIO ALGUNO AL ACTUAR EN CONTRA DE SUS PROPIOS ACTOS, CON LAS MANOS SUCIAS Y DE MALA FE.

**TERCER ERROR:**
ERRÓ EL TPI AL NO UTILIZAR SUS PROPIAS DETERMINACIONES DE HECHO SIENDO LAS MISMAS SUFICIENTES PARA DESESTIMAR LA RECONVENCIÓN EN CUANTO A LAS CONDICIONES RESTRICTIVAS.

Por su parte, el 7 de agosto de 2025, ASPA instó el recurso de *certiorari* TA2025CE00259, y formuló los siguientes señalamientos de error:

---

[21] Entradas núm. 295 y 296.

Erró como cuestión de derecho el Tribunal de Primera Instancia (TPI) al resolver mediante el procedimiento de una vista de argumentación de sentencia sumaria, una reclamación al amparo del Artículo 14.1 de la Ley 161 del 2009, que dispone un procedimiento sumario, a celebrarse a los diez días de presentada la petición y resuelto a los veinte días de celebrada la vista con el desfile de prueba documental y testifical.

Erró como cuestión de derecho el Tribunal de Primera Instancia al determinar que los hechos no cumplen con los requisitos establecidos para el Injunction Estatutario del Articulo 14.1 basado en que el mismo está disponible para revocar una determinación final y en los hechos no existe una determinación final ni se ha concedido un permiso, que se encuentra paralizado y no existe construcción a demoler.

Erró como cuestión de derecho el Tribunal de Primera Instancia al no aplicar el derecho que dispone el Reglamento Conjunto de Planificación y el Plan de Ordenamiento Territorial del municipio de Salinas sobre la Calificación y Clasificación de una finca, la cual a su vez está gravada por Servidumbres de Equidad y en donde se ejecutaron actos de construcción violando el único permiso que tenían de "Limpieza Simple de Corteza Terrestre".

El 12 de agosto de 2025, ASPA instó una *Solicitud de Desestimación de Petición de Certiorari* en el recurso TA2025CE00245. Alegó que la entidad jurídica CODEPOLA carece de legitimación para instar el recurso porque ya no figura como parte del litigio. En cuanto a los señores Torres Meléndez y Ramos Colón, sus respectivos cónyuges y sociedad de gananciales, adujo que se encontraban impedidos de presentar el recurso conforme la resolución registrada en la Entrada 273 en el caso SA2022CV00024 de SUMAC.

El 10 de septiembre de 2025, el Sr. Ramos Colón, la Sra. León Díaz y la Sociedad Legal de Gananciales compuesta por éstos, presentaron su *Oposición a la Solicitud de Desestimación de Certiorari.*

El 23 de septiembre de 2025, ASPA presentó una moción de réplica, en la que reiteró su petición de desestimación.[22]

---

[22] *Moción Enmendada de Solicitud de Permiso para Replicar a "Oposición a la Solicitud de Desestimación de Certiorari".* SUMAC-TA, Entrada núm. 6.

Examinados los escritos, así como la aludida Entrada 273 de SUMAC y aquellas a las que se hace referencia en el registro, nos percatamos de que en la aludida resolución el TPI no permitió al abogado del Sr. Torres Meléndez argumentar en la moción registrada en la Entrada 260, en la que únicamente había comparecido la entidad CODEPOLA a oponerse a cierta moción de sentencia sumaria presentada por ASPA el 11 de junio de 2024. En cuanto al Sr. Ramos Colón, la Entrada 273 solamente indica que éstos no comparecieron ni solicitaron prórroga para oponerse a la moción en cuestión.

Sin embargo, el récord no evidencia que los señores Torres Meléndez y Ramos Colón, sus respectivos cónyuges y la sociedad de gananciales hubieran sido sacados del pleito o sus representantes legales eliminados como abogados de récord y relevados de futuras comparecencias o participación alguna en esta causa. En cuanto a CODEPOLA, dicha entidad ya no es parte de este pleito desde la *Sentencia Parcial* emitida por el TPI el 2 de mayo de 2025, por lo que su comparecencia ante este Tribunal de Apelaciones se tiene por no puesta.

Por lo anterior, este Tribunal declara *no ha lugar* a la *Solicitud de Desestimación de Petición de Certiorari* presentada por ASPA el 12 de agosto de 2025, en el recurso TA2025CE00245.

Procedemos a atender los recursos incoados.

## II.

### A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[23]

---

[23] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[24] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[25], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[24] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).
[25] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[26]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[27] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación

---

[26] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[27] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

o aplicación de cualquier norma procesal o de derecho sustantivo.[28]

Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[29]

La discreción judicial se define como "'una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera'".[30] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[31] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[32]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción:

> […] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[33]

## C.

Las *alegaciones* son "los escritos mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas".[34] Su propósito es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes".[35] Por tanto, cualquier alegación mediante la cual una parte solicite un

---

[28] *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 210 (2024); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

[29] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[30] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).

[31] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.

[32] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.

[33] *SLG Zapata Rivera v. J.F. Montalvo*, supra, citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

[34] *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1061 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2202, pág. 279.

[35] *Íd.,* pág. 1062.

remedio – por ejemplo, una demanda o una reconvención – incluirá una relación sucinta y sencilla de los hechos que demuestran que procede el remedio solicitado y la solicitud del remedio que se alega debe concederse.[36]

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra antes de contestarla cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará.[37] A tales efectos, la referida regla lee, en lo pertinente, como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.

Por consiguiente, para disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[38] La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier

---

[36] Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1.
[37] *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 83 (2023); *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043, 1065 (2020).
[38] *Eagle Security v. Efrón Dorado et al.,* supra, pág. 84; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013).

estado de hechos que puedan ser probados en apoyo de su reclamación.[39]

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida.[40] Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada.[41]

Ahora bien, una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, obliga al demandante que se opone a establecer por qué la reclamación que presentó es del tipo que justifica un remedio legal.[42]

Además, la citada norma procesal establece que, si en una moción de desestimación en la que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de Procedimiento Civil (32 LPRA Ap. V, R. 36) hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción conforme a dicha regla. Sobre ello, el Tribunal Supremo ha expresado lo siguiente:

> La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración. Si de la materia ofrecida surge que el caso no se debería despachar

---

[39] *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[40] *Eagle Security v. Efrón Dorado et al.*, supra; *Pressure Vessels PR v. Empire Gas PR*, supra, pág. 505.
[41] *Colón v. Lotería*, 167 DPR 625, 649 (2006).
[42] *Conde Cruz v. Resto Rodríguez*, supra.

sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria.[43]

Respecto a la sentencia sumaria, este es un mecanismo regulado por la Regla 36 de Procedimiento Civil[44] que permite al tribunal disponer de un caso sin celebrar vista en su fondo.[45]

La Regla 36.1 de Procedimiento Civil[46], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[47] Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[48]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[49]

---

[43] *Capeles v. Alejandro*, 143 DPR, 300, 309 (1997). (Citas omitidas).

[44] 32 LPRA Ap. V, R. 36.

[45] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[46] 32 LPRA Ap. V, R. 36.1.

[47] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

[48] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

[49] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 722-723 (1986).

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[50] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que de dicte sentencia sumaria en su contra, de proceder en derecho.[51]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[52]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[53] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente".[54]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y

---

[50] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión*, supra, pág. 215.
[51] *León Torres v. Rivera Lebrón,* supra, pág. 43.
[52] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.
[53] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.
[54] *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998).

(2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[55]

Además, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*[56], indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[57] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[58] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[59]

Valga apuntar que el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[60]

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias

---

[55] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012).
[56] 193 DPR 100 (2015).
[57] *Íd.*, pág. 118.
[58] *Íd.*, pág. 119.
[59] *Íd.*
[60] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

versan esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como lo es la intención, los propósitos mentales o la negligencia.[61] Sin embargo, también se ha dicho que ello no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales.[62]

### D.

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, (Ley Núm. 161-2009), fue aprobada a los fines de reformar y transformar el sistema de obtención de permisos.[63]

El estatuto permite que cualquier persona que tenga un interés propietario o personal que pudiera verse adversamente afectado pueda presentar una solicitud de recursos extraordinarios ante el Tribunal de Primera Instancia para solicitar la revocación de un permiso, la paralización de una obra o usos no autorizados, la demolición de obras, entre otros remedios.[64] A esos efectos, el Artículo 14.1 de la Ley Núm. 161-2009 (23 LPRA sec. 9024), dispone, en lo atinente, que:

> La Junta de Planificación, así como cualquier Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la **paralización de una obra iniciada sin contar con las**

---

[61] *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).
[62] *Íd.*
[63] 23 LPRA sec. 9011, nota; *Díaz Vázquez et al. v. Colón Peña et al.*, 2024 TSPR 113, 214 DPR ___ (2024); *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014).
[64] *Díaz Vázquez et al. v. Colón Peña et al.*, supra.

**autorizaciones y permisos correspondientes**, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

[…]

Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.

**El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso** y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.

En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

[…] (Énfasis suplido).

De esta forma, el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* instituyó un procedimiento especial denominado *injunction* estatutario que se caracteriza por ser "un mecanismo estatutario, independiente, sumario y limitado", y cuyo propósito fundamental es "hacer viable la efectividad de las leyes y los reglamentos de planificación […]".[65]

---

[65] *Díaz Vázquez et al. v. Colón Peña et al.,* supra; *CBS Outdoor v. Billboard One, Inc.,* 179 DPR 391, 408 (2010); *Plaza Las Américas v. N & H,* 166 DPR 631, 646 (2005); *A.R.P.E. v. Rivera,* 159 DPR 429, 443 (2003); *Luan Investment Corp. v. Román,* 125 DPR 533, 544 (1990).

En *Díaz Vázquez et al. v. Colón Peña et al.*[66] el Tribunal Supremo expresó que:

> De conformidad con la Regla 53 de Procedimiento Civil, supra, todos los procedimientos legales especiales, los recursos extraordinarios y cualquier otro procedimiento de naturaleza especial (que no esté incluido en las Reglas 54 a 60 de Procedimiento Civil, *supra*) "**se tramitarán en la forma prescrita en el estatuto correspondiente**" y se aplicarán las disposiciones de las Reglas de Procedimiento Civil en todo aquello que no resulte incompatible, ni esté en conflicto con dichos estatutos. Regla 53 de Procedimiento Civil, *supra.* (Énfasis suplido).[67]

Además, en *Díaz Vázquez et al. v. Colón Peña et al.*, supra, el Tribunal Supremo expuso que, el *injunction* estatutario para ordenar la paralización o demolición de un uso u obra o la revocación de un permiso al amparo del Artículo 14.1 de la Ley Núm. 161-2009, *supra,* no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de Procedimiento Civil, ni tampoco se le pueden oponer las defensas tradicionales de la equidad. Por tanto, este remedio al ser de carácter estatutario y no surgir de la equidad, procede cuando se demuestre que la obra o el uso no cuenta con autorizaciones o permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido.[68]

**E.**

Las servidumbres en equidad, también conocidas como condiciones restrictivas, "son las condiciones o restricciones que limitan el uso de determinados terrenos y mediante las cuales se imponen cargas o gravámenes que obligan a presentes y futuros adquirentes".[69] De ordinario, las restricciones quedan constituidas unilateralmente por parte del urbanizador de una finca, de modo

---

[66] Nota 61, *ante.*
[67] *Díaz Vázquez et al. v. Colón Peña et al.*, supra, a la pág. 11.
[68] *Íd.,* a la pág. 13.
[69] *SLG Fernández-Bernal v. RAD MAN et al.*, 208 DPR 310, 326 (2021).

que queden restringidas las facultades de los futuros adquirientes del inmueble gravado.[70]

El Tribunal Supremo ha consignado una serie de requisitos para establecer la validez y eficacia de las condiciones restrictivas. Estos son: (1) las limitaciones deberán ser razonables; (2) deben establecerse como parte de un plan general de mejoras; (3) deben constar de forma específica en el título de la propiedad, y (4) deben ser inscritas en el Registro de la Propiedad.[71] Una vez se inscriben las servidumbres en equidad en el Registro de la Propiedad, las mismas quedan constituidas como un derecho real oponibles *erga omnes*.[72]

Sin embargo, el Tribunal Supremo también ha reiterado que las servidumbres en equidad pueden modificarse o extinguirse: (1) por acuerdo de los interesados, ya sea mediante rescisión total o parcial o mediante la constitución de nuevas restricciones que alteren las anteriores; (2) por el transcurso del tiempo o por realizarse la condición, si las restricciones se constituyeron a plazo o condicionalmente; (3) por confusión, si se reúne en una misma persona la propiedad de todos los predios sirvientes y dominantes; (4) por renuncia o abandono de los propietarios que se benefician de la servidumbre, mediante conducta que demuestre la intención concluyente de renunciar o abandonarla; (5) por expropiación forzosa del predio sirviente, si las condiciones restrictivas son incompatibles con el uso público del inmueble expropiado, y (6) **cuando cambios radicales del vecindario no solo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción**

---

[70] *Dorado del Mar v. Weber et al.*, 203 DPR 31, 42-43 (2019).

[71] *SLG Fernández-Bernal v. RAD MAN et al.*, supra; *SLG Pérez-Rivera v. Registradora*, 189 DPR 729, 736 (2013).

[72] *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 353 (1986).

**tenía para el dueño del predio dominante, por lo cual resulta imposible alcanzar los fines que perseguía la servidumbre**.[73]

En cuando a los cambios radicales, el Tribunal Supremo ha señalado que el análisis a seguir es "si por razón de cambios radicales en las condiciones del vecindario, resulta imposible lograr el propósito que persigue la servidumbre en equidad. Es, entonces, cuando ésta queda modificada o extinguida".[74] El peso de la prueba recae sobre quien ataca la servidumbre de equidad.[75]

Por último, el Tribunal Supremo ha establecido unos elementos a ser considerados a la hora de analizar los cambios, a saber: (1) el tamaño del área sujeta a las restricciones; (2) la localización de los cambios ocurridos con respecto al área restringida; (3) el tipo de cambio ocurrido; (4) cambios en la infraestructura, con particular referencia a los patrones de tránsito; (5) la extensión y naturaleza de los usos comerciales e industriales en las áreas circundantes; (6) valor de los terrenos residenciales en comparación con los comerciales; (7) término y duración de las restricciones; (8) si las restricciones continúan siendo beneficiosas o no para los dueños de los solares afectados; y (9) el cambio ocurrido en la zonificación del área y sus alrededores.[76]

### III.

La Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a expedir el auto de *certiorari* cuando se recurre de la denegatoria de una moción de carácter dispositivo, como lo es una moción de sentencia sumaria.[77] En virtud de ello, ejercemos nuestra discreción y expedimos el auto de *certiorari*.

---

[73] *Dorado del Mar v. Weber et al.*, *supra*, pág. 44; *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 537 (2002); *Asoc. V. Villa Caparra v. Iglesia Católica*, supra, pág. 354.

[74] *Asoc. Vec. Urb. Huyke v. Bco. Santander, supra,* pág. 542.

[75] *Íd.*

[76] *Íd.,* pág. 543-544.

[77] Entre las mociones de carácter dispositivo, cuya denegatoria por el foro primario permite el ejercicio de nuestra función revisora, se encuentran la moción de desestimación, de desistimiento, de sentencia sumaria o de sentencia por las alegaciones. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 594 (2011).

Según expuesto, este Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar una solicitud de sentencia sumaria.[78] Por consiguiente, este Tribunal solo puede considerar los documentos que se presentaron ante el TPI y determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de manera correcta.

Aclarado lo anterior, y luego de analizar la solicitud de sentencia sumaria presentada por el Sr. Torres Meléndez, así como la oposición de ASPA, concluimos que los hechos incontrovertidos esbozados por el TPI están apoyados en la prueba que obra en autos y no existe controversia genuina de hechos materiales. Por ello, los hacemos formar parte de este escrito.

A esos fines, corresponde determinar si los hechos incontrovertidos apuntados por el TPI son suficientes para adjudicar las causas de acción de la reconvención. Comencemos por la reclamación basada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.* En el presente caso, ASPA plantea que erró el TPI al desestimar dicha causa de acción, tras determinar que las alegaciones no satisfacen los requisitos de una causa de acción de *injunction* estatutario del Artículo 14.1 de la Ley Núm. 161-2009, *supra,* porque no existe una determinación final o concesión de permiso alguno, el proyecto se encuentra paralizado y tampoco se ha iniciado la construcción. ASPA afirma que sus alegaciones constituyen una reclamación válida bajo el Artículo 14.1 de la Ley Núm. 61-2009, *supra,* y que el TPI violentó su derecho a un debido proceso de ley al no seguir el procedimiento dispuesto en la

---

[78] Del examen de la *Moción Solicitando Desestimación de la Reconvención* presentada el 7 de mayo de 2024 por CODEPOLA surge que ésta incluyó y relacionó la prueba documental en la que basó sus alegaciones y fundamentó su postura en derecho. Por tal razón, concluimos que la moción cumple con la Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a). Asimismo, la moción en *Oposición a "Solicitud de Desestimación de Reconvención" de demandante entrada 235,* presentada por ASPA, cumple con los requisitos de la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b).

disposición legal que exige la celebración de una vista que le permitiera presentar prueba a favor de sus alegaciones.

Conforme expuesto, al presentarse un recurso de *injunction* estatutario al amparo del Artículo 14.1 de la Ley Núm. 161-2009, *supra,* el promovente procura que el tribunal ordene la paralización de una obra que no cuenta con los permisos de uso o construcción correspondientes y la demolición de obras construidas que tampoco cuenten con un permiso de construcción. La disposición legal solamente exige alegar que existe una ley o reglamento que regula la actividad denunciada y que la persona señalada está violentando la disposición legal. Justamente, eso fue lo que ASPA alegó en su reconvención: que el Sr. Torres Meléndez está llevando a cabo la construcción del proyecto de polígono de tiro sin contar con permiso para ello. Por tanto, dichas alegaciones son suficientes para articular una reclamación válida de *injunction* estatutario a tenor con el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* contra el Sr. Torres Meléndez. En efecto, los hechos no controvertidos número 6, 9, 10, 11 y 12 de la resolución recurrida establecen infracciones legales a la Ley Núm. 161-2009.

Siendo así, el TPI debió cumplir el procedimiento estatuido en el Artículo 14.1 de la Ley Núm. 161-2009 y analizar si procedía el remedio solicitado, de probarse los hechos alegados. El TPI no celebró una vista evidenciaria, sino una vista argumentativa en la que se limitó a escuchar los argumentos de las partes con el único propósito de resolver la *Moción Solicitando Desestimación de Reconvención* y su oposición. La vista evidenciaria es necesaria para auscultar si se conjugaron los criterios establecidos para conceder el remedio de *injunction* estatutario solicitado. No era suficiente que las partes argumentaran sus respectivas posiciones, sino que es necesario que las partes puedan presentar prueba pertinente para que el tribunal evalúe si procede o no la concesión del remedio.

Así pues, luego de revisar *de novo* el expediente de la forma más favorable a ASPA, concluimos que los hechos incontrovertidos apuntados en la *Resolución* resultan insuficientes para sostener la desestimación sumaria de la reclamación fundada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra.* Por consiguiente, sin pronunciarnos sobre los méritos de dicha causa de acción, resolvemos que procede dejar sin efecto la desestimación de la aludida causa de acción, restituir esta reclamación fundada en el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* para que el TPI celebre la vista evidenciaria que estipula el aludido Artículo 14.1, en la que las partes presenten su prueba y el tribunal analice si procede el remedio solicitado.

En contraste, no consideramos irrazonable, contrario a derecho ni que constituya un fracaso a la justicia el hecho que el TPI haya determinado no desestimar de manera sumaria la causa de acción de servidumbre en equidad o condiciones restrictivas. Ello, pues coincidimos con el TPI en que existen hechos esenciales y pertinentes en controversia en cuanto a dicha causa de acción presentada por ASPA. Tal como el TPI esbozó en la parte expositiva, dado los hechos particulares del caso -en el que existen comercios en los predios sujetos a condiciones restrictivas- se debe pasar juicio sobre los cambios ocurridos en la comunidad y sus efectos en la aplicabilidad de la servidumbre restrictiva. Esto debe ser objeto de una vista evidenciaria, por lo que no se justifica nuestra intervención en esta etapa de los procedimientos. En virtud de lo anterior, declinamos intervenir con lo actuado por el TPI en cuanto a la causa de acción sobre condiciones restrictivas.

En conclusión, denegamos la expedición del *certiorari* TA2025CE00245, y expedimos el *certiorari* TA2025CE00259. Modificamos el dictamen recurrido, a los fines de dejar sin efecto la desestimación de la causa de acción de la reconvención amparada

en el Artículo 14.1 de la Ley 161-2009, *supra.* Restituimos dicha reclamación y devolvemos el caso al foro primario para la continuación con el procedimiento de celebración de vista estatuido en el Art. 14.1 de la Ley Núm. 161-2009.

**IV.**

Por los fundamentos que anteceden, denegamos el recurso de *certiorari* TA2025CE00245 y expedimos el recurso de *certiorari* TA2025CE00259, así pues, modificamos el dictamen recurrido. En específico, se deja sin efecto la desestimación de la causa de acción de la reconvención amparada en el Artículo 14.1 de la Ley 161-2009. Se restituye dicha reclamación y devolvemos el caso al foro primario para la continuación de los procedimientos conforme lo aquí dispuesto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones